## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JAMES ORTIZ and COLBY NESS,** on behalf of themselves and others similarly situated, | : : : : | **CIVIL ACTION NO. 1:21-CV-1060** **(Judge Conner)** |
| **Plaintiffs** | : : | |
| **v.** | : : | |
| **FREIGHT RITE, INC, US PACK LOGISTICS LLC, CAPITAL DELIVERY SYSTEMS, INC a/k/a JLPDA, INC, SHEILA BACH, and JOHN DOES 1-10,** | : : : : : : | |
| **Defendants** | : | |

## <u>MEMORANDUM</u>

Plaintiffs and defendants jointly move the court to approve their settlement agreement.  The parties seek to resolve plaintiffs' claims against defendants under various federal and state wage-and-hour laws.  After careful review of the proposed settlement, the court will grant the parties' joint motion.

## I.    <u>Factual Background & Procedural History</u>

Plaintiffs James Ortiz and Colby Ness previously worked for defendant Freight Rite, Inc. ("Freight Rite"), in Camp Hill, Pennsylvania.  (<u>See</u> Doc. 1 ¶¶ 6-7). According to plaintiffs' complaint, defendant US Pack Logistics LLC ("US Pack") acquired Freight Rite in 2020, and US Pack and defendant Capital Delivery Systems, Inc. ("Capital Delivery Systems"), thereafter "became successors to" Freight Rite's operations in Camp Hill.  (<u>See</u> <u>id.</u> ¶¶ 8-12).  Plaintiffs allege that Freight Rite failed to pay minimum wage, failed to pay overtime due, and made

illegal deductions from their compensation in violation of the federal Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201 *et seq.*; Pennsylvania's Minimum Wage Act of 1968 ("PMWA"), 43 PA. STAT. AND CONS. STAT. ANN. § 333.101 *et seq.*; and Pennsylvania's Wage Payment and Collection Law ("WPCL"), 43 PA. STAT. AND CONS. STAT. ANN. § 260.1 *et seq.* Plaintiffs also assert a common-law claim of unjust enrichment.[1]

Following successful settlement negotiations, the parties filed the instant joint motion for approval of their proposed settlement agreement, along with a copy of the agreement for the court's review.

## II.    Legal Standard

Congress enacted the FLSA to "protect all covered workers from substandard wages and oppressive working hours." Barrentine v. Ark.-Best Freight Sys., 450 U.S. 728, 739 (1981) (citing 29 U.S.C. § 202(a)). The statute was designed to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work and would be protected from the evil of overwork as well as underpay." Id. (alteration in original) (internal quotation marks and citations omitted). To safeguard employee rights made mandatory by statute, a majority of courts have held that *bona fide* FLSA disputes over unpaid wages may be settled or compromised only through payments made under the supervision of

---

[1] Plaintiffs initiated this case as a putative class and collective action on behalf of all similarly situated individuals. (See Doc. 1 ¶¶ 1, 39-48). Plaintiffs have not moved to certify the class or collective. Accordingly, the settlement and instant motion resolve only the plaintiffs' individual claims.

the Secretary of the Department of Labor or by judicial approval of a proposed settlement in an FLSA lawsuit.  See, e.g., Lynn's Food Stores, Inc. v. United States ex rel. U.S. Dep't of Labor, 679 F.2d 1350, 1354-55 (11th Cir. 1982); Cheeks v. Freeport Pancake House, Inc., 796 F.3d 199, 206 (2d Cir. 2015); Walton v. United Consumers Club, Inc., 786 F.2d 303, 305-07 (7th Cir. 1986); but see Martin v. Spring Break '83 Prods., L.L.C., 688 F.3d 247, 256 (5th Cir. 2012).

The Third Circuit has not addressed whether FLSA actions claiming unpaid wages may be settled privately prior to obtaining judicial approval.  Absent such guidance, district courts within the Third Circuit have consistently adopted the majority view and have required judicial approval as a precondition to amicable resolution of claims.[2]  Courts typically employ the considerations set forth by the Eleventh Circuit in Lynn's Food Stores, 679 F.2d 1350, when evaluating proposed FLSA settlement agreements.  See, e.g., Solkoff, 435 F. Supp. 3d at 652; Kraus, 155 F. Supp. 3d at 522; Potoski, 2020 WL 207061, at *2; Waltz, 2017 WL 2907217, at *2; Bettger, 2015 WL 279754, at *4.

Under Lynn's Food Stores, a proposed settlement will merit judicial approval if it is a "fair and reasonable resolution of a *bona fide* dispute over FLSA

---

[2] See, e.g., Solkoff v. Pa. State Univ., 435 F. Supp. 3d 646, 652 (E.D. Pa. 2020) (citing Howard v. Phila. Hous. Auth., 197 F. Supp. 3d 773, 776 (E.D. Pa. 2016)); Kraus v. PA Fit II, LLC, 155 F. Supp. 3d 516, 522 (E.D. Pa. 2016) (citing Adams v. Bayview Asset Mgmt., LLC, 11 F. Supp. 3d 474, 476 (E.D. Pa. 2014)); Potoski v. Wyoming Valley Health Care Sys., No. 3:11-CV-582, 2020 WL 207061, at *2 (M.D. Pa. Jan. 14, 2020) (citing Bettger v. Crossmark, Inc., No. 1:13-CV-2030, 2015 WL 279754, at *3 (M.D. Pa. Jan. 22, 2015)); Waltz v. Aveda Transp. & Energy Servs. Inc., No. 4:16-CV-469, 2017 WL 2907217, at *2 n.13 (M.D. Pa. July 7, 2017) (collecting cases); Green v. Ventnor Beauty Supply, Inc., No. 1:18-CV-15673, 2019 WL 2099821, at *1 (D.N.J. May 14, 2019) (same).

3

provisions." Lynn's Food Stores, 679 F.2d at 1355.  When the reviewing court is satisfied that the agreement resolves a *bona fide* dispute, it proceeds in two phases: *first*, the court assesses whether the agreement is fair and reasonable to the plaintiff employee; and *second*, the court determines whether the settlement furthers or "impermissibly frustrates" implementation of the FLSA in the workplace.  See Potoski, 2020 WL 207061, at *2; Waltz, 2017 WL 2907217, at *2; Kraus, 155 F. Supp. 3d at 522; Bettger, 2015 WL 279754, at *4.

## III.  Discussion

The court will consider *seriatim* the terms of the parties' proposed settlement, the nature of their dispute, and the fairness and reasonableness of the compromise as to plaintiffs and as measured against the intent of the FLSA.[3]  See Lynn's Food Stores, 679 F.2d at 1355.

### A.    Terms of Proposed Settlement

Under the terms of the proposed settlement, defendants will pay $6,000 to each of the two plaintiffs, apportioned as follows: $2,000 in alleged unpaid overtime compensation, $2,000 in liquidated damages, and $2,000 in attorneys' fees and costs. (See Doc. 30 ¶¶ 12-15; see also Doc. 30-1 at 2 ¶ 2).  In exchange for these payments, plaintiffs agree to dismiss their FLSA claims with prejudice and to release all claims they may have related to the FLSA claims asserted in this case.  (See Doc. 30-1 at 2

---

[3] The parties have agreed to resolve their state-law claims by separate agreement.  (See Doc. 30 at 3 n.2).  Their instant motion, and this memorandum, concern only the federal claim.

¶ 3, at 3-4 ¶ 6; <u>see also</u> Doc. 30 ¶ 11).  The agreement does not include confidentiality or nondisparagement clause.  (<u>See generally</u> Doc. 30-1).

    **B.**    ***Bona Fide* Dispute**

We first address the threshold question of whether the proposed settlement resolves a *bona fide* dispute between the parties.  Plaintiffs allege that defendants willfully violated federal law.  (<u>See</u> Doc. 1 ¶¶ 49-54).  Specifically, they allege that defendants misclassified them as independent contractors, resulting in alleged denial of overtime pay and improper wage deductions.  (<u>See</u> <u>id.</u> ¶¶ 19-38).  Defendants raise a number of defenses which, if proven at trial, could limit or bar recovery—namely, that US Pack and Capital Delivery are not subject to successor liability, and that, even if plaintiffs were misclassified as independent contractors, they are exempt from the FLSA's overtime rules.  (<u>See</u> Doc. 27 at 19-20 ¶¶ 2-3; Doc. 30 ¶¶ 18-19).

A *bona fide* dispute exists when parties genuinely disagree about the merits of an FLSA claim—when there is factual rather than legal doubt about whether the plaintiff would succeed at trial.  <u>See</u> <u>Lynn's Food Stores</u>, 679 F.2d at 1354; <u>Waltz</u>, 2017 WL 2907217, *2; <u>Kraus</u>, 155 F. Supp. 3d at 530.  An agreement settling FLSA claims must not amount to a "mere waiver of [an employee's] statutory rights," but rather must "reflect a reasonable compromise" of genuinely disputed factual issues.  <u>Lynn's Food Stores</u>, 679 F.2d at 1354.  It appears there are genuine factual disputes with respect to whether two of three defendants—US Pack and Capital Delivery— are subject to successor liability.  And if plaintiffs are, as defendants allege, subject

to an FLSA exemption, their claims under the FLSA would be barred entirely.  We find that the proposed settlement resolves a *bona fide* dispute between the parties.

### C.    Fair and Reasonable Settlement

We must next determine whether the proposed settlement represents a fair and reasonable compromise of plaintiffs' claims.  In undertaking this analysis, district courts within the Third Circuit have looked to the factors set forth in <u>Girsh v. Jepson</u>, 521 F.2d 153, 157 (3d Cir. 1975), which established criteria for evaluating the fairness of proposed class-action settlements.  <u>See</u> <u>Potoski</u>, 2020 WL 207061, at *3-4 (collecting cases); <u>Kraus</u>, 155 F. Supp. 3d at 523 n.3 (same); <u>see also</u> <u>Brumley v. Camin Cargo Control, Inc.</u>, No. 08-1798, 2012 WL 1019337, at *4-5 (D.N.J. Mar. 26, 2012)).  Under <u>Girsh</u>, courts examine:

> (1) the complexity, expense[,] and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgement; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

<u>Girsh</u>, 521 F.2d at 156-57 (citation omitted).  Some of the <u>Girsh</u> factors are of "little help, if not irrelevant" in single-plaintiff cases, so courts need not apply them mechanically.  <u>Howard</u>, 197 F. Supp. 3d at 777 n.1 (citing <u>Kraus</u>, 155 F. Supp. 3d at 523 n.3).  The factors most applicable outside of the collective-action context are the

"cost-benefit analysis" of settling versus proceeding to trial and the existence of arms-length negotiations in reaching the proposed settlement. Id.

Applying the appropriate Girsh factors, we are satisfied that the parties' proposed settlement constitutes a fair and reasonable compromise of plaintiffs' claims. Plaintiffs' counsel acknowledges in the joint motion that plaintiffs face certain risks in proceeding with their FLSA claims. (See Doc. 30 ¶¶ 23-24); see also supra at 5-6. The parties did not engage in fact discovery, but they did explore and gain an adequate appreciation for the strengths and weaknesses of their respective positions during negotiations. (See id. ¶¶ 21, 23, 25). And they are in agreement that the proposed net funds to each plaintiff—$2,000 in unpaid overtime wages and $2,000 in liquidated damages, representing 45% of their believed unpaid overtime, (see Doc. 30 ¶ 21; Doc. 30-1 at 2 ¶ 2)—provides sufficiently reasonable compensation. Weighing all of the applicable factors, we find that the proposed settlement presents a fair and reasonable resolution of plaintiffs' claims.

### D.      Reasonableness of Attorneys' Fees

We must also consider the reasonableness of the proposed award of attorneys' fees. See 29 U.S.C. § 216(b); see also Kraus, 155 F. Supp. 3d at 533. In the FLSA settlement context, courts apply the percentage-of-recovery method to evaluate the propriety of a requested fee award, and then "cross-check" that figure against the lodestar calculation. See, e.g., Kraus, 155 F. Supp. 3d at 533 (citing Keller v. TD Bank, No. 12-5054, 2014 WL 5591033, at *14 (E.D. Pa. Nov. 4, 2014)). Courts reviewing private FLSA settlements have looked to the percentage-of-

recovery factors applied to common-fund settlements to assess the reasonableness

of requested attorneys' fees.  See id.  Those factors include:

> (1) the size of the fund created and the number of
> persons benefitted; (2) the presence or absence of
> substantial objections by members of the class to the
> settlement terms and/or fees requested by counsel;
> (3) the skill and efficiency of the attorneys involved;
> (4) the complexity and duration of the litigation; (5) the
> risk of nonpayment; (6) the amount of time devoted to
> the case by plaintiffs' counsel; and (7) the awards in
> similar cases.

Id. (quoting Gunter v. Ridgewood Energy Corp., 223 F.3d 190, 195 n.1 (3d Cir. 2000)).

Under plaintiffs' fee agreement, plaintiffs' counsel are entitled to the

greater of one-third of any recovery amount or their fees incurred based on an

hourly rate of $350.  (See Doc. 30 ¶ 29).  Plaintiffs' counsel observes that the fee set

forth in the parties' proposed settlement agreement—$1,473.85, after accounting for

$526.15 in costs—is a reduction below the fee agreement's rate under either method

of calculation.  (See id. ¶¶ 29-30).  Indeed, the net fee represents less than 25% of the

total settlement amount.  See Kraus, 155 F. Supp. at 534 (observing that "courts

have approved attorneys' fees in FLSA settlement agreements 'from roughly 20-

45%' of the settlement fund" (quoting Mabry v. Hildenbrandt, No. 14-5525, 2015 WL

5025810, at *4 (E.D. Pa. Aug. 24, 2015) (collecting cases))).  Plaintiffs' counsel have

not advised the court how many hours they have expended on this litigation, but

we presume it is more than 4.2—which is roughly the number of hours, at a rate of

$350, contemplated by the net fee in the settlement agreement.  The court finds that

the requested fee is reasonable given plaintiffs' agreement thereto and counsel's

agreement to accept a fee below that set out in the fee agreement; the size of the

settlement; the risks of litigation; and awards in comparable FLSA settlements.  We will thus approve the requested attorneys' fee award.

### E.    Furtherance of the FLSA

We must lastly determine whether the proposed settlement furthers or frustrates implementation of the FLSA in the workplace.  This inquiry requires consideration of three interrelated FLSA objectives: (1) combatting "inequalities in bargaining power between employers and employees," Lynn's Food Stores, 679 F.2d at 1352 (citing Brooklyn Sav. Bank v. O'Neil, 324 U.S. 697, 706 (1945)); (2) ensuring widespread employer compliance with the FLSA, see Brumley, 2012 WL 1019337, at *7 (citation omitted); and (3) honoring the "private-public character of employee rights," whereby the public has a general interest in employee well-being and access to fair wages, see Cuttic, 868 F. Supp. 2d at 467; see also Brumley, 2012 WL 1019337, at *7 (citation omitted).  Courts assess a settlement's consonance with these objectives by considering, *inter alia*, the scope of any confidentiality provisions and the breadth of any release of claims provisions.  See Haley v. Bell-Mark Techs. Corp., No. 1:17-CV-1775, 2019 WL 1925116, at *5 (M.D. Pa. Apr. 30, 2019) (Conner, C.J.) (collecting cases).

As noted *supra*, the parties' proposed settlement agreement is not confidential, and the release of claims is narrowly tailored to raise only those claims relating to this lawsuit.  Having carefully considered the terms of the agreement, and given the claims and the factual circumstances presented by the pleadings filed to date, we find that the proposed settlement agreement is consonant with the purposes of the FLSA.

IV.    **<u>Conclusion</u>**

The court will grant the parties' joint motion to approve their FLSA

settlement.  An appropriate order shall issue.


/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:    December 17, 2021